| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |

------------------------------------------------------------x
:
*In re:*                                                   :
:       Case No. 16-10222 (JLG)
Rahul Dev Manchanda,                                       :       Chapter 13
                                           *Debtor*        :
:
------------------------------------------------------------x

**MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO HOLD ANN
GABRIEL OF SOUTHERN CONNECTICUT STATE UNIVERSITY IN CIVIL AND
CRIMINAL CONTEMPT**

**A P E A R A N C E S :**

RAHUL DEV MANCHANDA, *pro se*
82 Beaver Street, Apt. 301
New York, New York 10005

OFFICE OF THE ATTORNEY GENERAL
*Attorneys for Ann Gabriel and
Southern Connecticut State University*
55 Elm Street, 4th Floor
P.O. Box 120
Hartford, Connecticut 06141-0120
By:    Denise Mondell, Esq.,
           Assistant Attorney General

**JAMES L. GARRITY, JR.
U.S. BANKRUPTCY JUDGE**

       The matter before the Court is a motion (the "**Motion**")[1] by Rahul Dev Manchanda (the

"**Debtor**"), the chapter 13 debtor herein, seeking to hold Ann Gabriel ("**Gabriel**") of Southern

---

[1] The Motion is in the form of the Debtor's *Affirmation in Support of Motion for Contempt*, dated February 26, 2016 [ECF Doc. No. 63] (the "**Manchanda Affirmation**"), supported by a *Memorandum of Law and Proposed Orders of Contempt Against Paul Carty, SCSU, Robert Mercer-Falkoff, GAL Joe Gabriel, Sharie Kruzic and Judge Jane Emons*, dated March 8, 2016 [ECF Doc. No. 81] (the "**Memo of Law**"); a *Supplemental Memorandum of Law and Proposed Orders of Contempt Against Ann Gabriel of SCSU and GAL Joe Silvestro of Kolb & Associates PC*, dated March 28, 2016 [ECF Doc. No. 107] (the "**Supplemental Memo**"); and the *Reply Affidavit to Contempt Objection of SCSU Ann Gabriel*, dated April 6, 2016 [ECF Doc. No. 120] (the "**Reply**").

Connecticut State University ("**SCSU**")[2] in civil and criminal contempt based upon alleged violations of the automatic stay provisions in sections 362(a)(3) and (a)(6) of the Bankruptcy Code. Gabriel objects to the Motion.[3] The Court conducted an initial hearing on the Motion on March 15, 2016, and an adjourned hearing on April 12, 2016 (the "**April 12 Hearing**").[4] Manchanda is an attorney and appeared in the case *pro se*. Gabriel and SCSU were represented by Denise S. Mondell, Assistant Attorney General for the Office of the Attorney General for the State of Connecticut.

The Debtor contends that SCSU's collection of fees for two supervised visitation sessions that he participated in with his children, which were conducted by SCSU staff subsequent to his bankruptcy filing, and in conjunction with a matter commenced prepetition in Connecticut state court, violated the automatic stay against the post-petition collection of prepetition debt and/or exercising control over property of the Debtor's estate without court authority. Moreover, the Debtor asserts that alleged threats against him of criminal prosecution made by Gabriel and other SCSU staff members, including reporting the Debtor to SCSU campus police, and SCSU's cancellation of future visitation sessions with his children after he complained about those fees also violated the stay. He seeks to hold Gabriel in civil and criminal contempt of court and has asked for compensatory and punitive damages and the incarceration of Gabriel. Although the Debtor does not specify the statutory or common law predicates for the sanctions he is seeking,

---

[2] The Debtor filed the Motion against Gabriel. Nonetheless, in the papers filed in support, the Debtor intimates and at times states that SCSU itself or other persons in its employ are the parties violating the automatic stay against whom he seeks relief. As necessary, the Court addresses the Debtor's allegations against both Gabriel and SCSU.

[3] *See Objection of Ann Gabriel of the Southern Connecticut State University Marriage and Family Therapy Department to Debtor's Motion for Contempt*, dated April 5, 2016 [ECF Doc. No. 119] (the "**Objection**"), supported by the *Affidavit of Ann Gabriel of the Southern Connecticut State University Marriage and Family Therapy Department to Debtor's Motion for Contempt*, dated April 4, 2016 [ECF Doc. No. 119-1] (the "**Gabriel Affidavit**").

[4] At the hearing, the parties relied on their submissions to the Court, including affidavits filed in support of their respective positions. Both parties addressed the Court on matters raised in their pleadings and other matters. Neither party objected to the use of the pleadings and neither sought to cross-examine the respective affiants.

2

the Court will analyze the Motion under §§ 105 and 362(k) of the Bankruptcy Code. The former "confers 'statutory contempt powers" [on the Court] which inherently include the ability to sanction a party." *Fatsis v. Braunstein (In re Fatsis),* 405 B.R. 1, 7 (1st Cir. BAP 2009). The latter permits an individual debtor to recover actual damages, including costs and attorneys' fees and, in appropriate cases, punitive damages, for injuries caused by a willful violation of the automatic stay. *See* 11 U.S.C. § 362(k).

As explained below, the Debtor has not established that Gabriel or anyone else at SCSU violated the automatic stay when SCSU collected from the Debtor a $20.00 fee per visit for two post-petition supervised visitation sessions with the Debtor and his minor children. That is because such collection was not on account of a pre-petition debt, but instead was for a post-petition, ordinary living expense incurred as part of the pending child visitation proceeding. Moreover, there is no basis on which to find that Gabriel or anyone else at SCSU violated the automatic stay through threats of criminal prosecution made under any circumstances. Finally, cancelation of his future visitation sessions did not violate the stay because the cancelation occurred as a direct result of "derogatory and abusive" statements the Debtor made about SCSU and its employees, and done within a pending visitation proceeding which is excepted from the stay. The Debtor has failed to establish that any violations of the automatic stay actually occurred. He has not met his burden of establishing a right to civil or criminal contempt sanctions or relief under § 362(k). Accordingly, the Motion is **DENIED.**

### Jurisdiction

This memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. This Court has jurisdiction of

the Motion pursuant to 28 U.S.C. §§ 1134 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## Background

The relevant facts are not in dispute. The Debtor filed his chapter 13 case on January 29, 2016 (the "**Petition Date**"). The Debtor is the father of two minor children and is party to a family court proceeding (the "**Family Court Proceeding**") pending in the Superior Court of the State of Connecticut, Judicial District of New Haven. Gabriel is the Supervised Visitation Manager at the Marriage and Family Therapy Department at SCSU. Gabriel Aff. ¶ 1. Prior to the Petition Date, on or about December 19, 2015, Gabriel was advised by Joseph DiSilvestro, the minor children's court-appointed guardian ad litem in the Family Court Proceeding, of the need to establish supervised visitation for the Debtor to see his children. *Id.* at ¶ 3. By letter dated December 22, 2015 (the "**December 22 Letter**"), Gabriel advised the Debtor, among other things, that to arrange for supervised visitations with his children, the Debtor needed to provide SCSU with a completed Supervised Visitation Packet (from the Debtor and his ex-wife) and a $150.00 non-refundable set-up fee from the visiting adult, made payable to SCSU. Gabriel Aff. ¶ 4 and Ex. A.

Debtor timely responded to the December 22 Letter, and by letter dated January 9, 2016, Gabriel confirmed that on January 6, 2016, she had received his "packet of information" and payment of the non-refundable $150.00 fee. *Id.* at Ex. C. *See also* Manchanda Supp. Memo. Ex. A. Included in that "packet of information" were copies of a Supervised Visitation Contract and Clients Rights and Procedures executed by the Debtor (collectively, the "**Visitation**

4

**Agreement**"), dated January 2, 2016. *See* Gabriel Aff. Ex. C. The Supervised Visitation Contract provides in relevant part that (i) "[a]dults (and anyone else who is present [at the supervised visitation) must refrain from inappropriate and/or abusive language or behavior toward the child(ren) or anyone else" (¶ 15); (ii) "Neither adult will use abusive or threatening language or behavior toward SCSU staff" (¶ 21); (iii) "Adults understand that the Visiting Adult [in this case the Debtor] is responsible for all fee payments, unless otherwise specified. Payment will be made at the beginning of each visit. Failure to do so will result in termination of visits" (¶ 23); and (iv) "[SCSU] reserve[s] the right to close a case AT ANY TIME, for failure to follow clinic policies or procedures." (¶ 26) (emphasis in original). The Clients Rights and Procedures provides in relevant part that (i) "[f]ees are generally set according to income and range between $20.00 and $60.00 per session;" (ii) the Debtor has the "right . . . to request an adjustment of your fee;" (iii) the Debtor should "inform [SCSU] of the need for a lower fee;" and (iv) "[i]f your circumstances change, you may request an adjustment of your fee." SCSU set the Debtor's visitation session fee at $20.00 (each a "**Visitation Session Fee**"). Gabriel Aff. ¶ 9.

On February 4, 2016, the Debtor attended a Visiting Parent Orientation. In accordance with SCSU guidelines and procedures, no fee was charged for that program. Gabriel Aff. ¶ 6. On February 11, 2016, the Debtor attended his first supervised visitation appointment with his children at SCSU. Gabriel Aff. ¶ 7. At that time, the Debtor paid the $20.00 Visitation Session Fee. *See* Manchanda Supp. Memo. Ex. A, Receipt dated February 11, 2016. On or about February 16, 2016, by fax, the Debtor notified Gabriel and others, that he had filed for bankruptcy on January 29, 2016. On February 18, 2016, the Debtor attended his a second supervised visitation appointment with his children at SCSU. Gabriel Aff. ¶ 7. At that time, the

5

Debtor paid the $20.00 Visitation Session Fee. *See* Manchanda Supp. Memo. Ex. A, Receipt dated February 18, 2016.

     Subsequent to his supervised visitation on February 18, 2016, the Debtor met with one of the SCSU therapists (the "**February 18 Conference**") and "expressed dissatisfaction with SCSU's supervised visitation procedures and the manner in which the supervised visitation was being conducted by SCSU." Gabriel Aff. at ¶ 10. On or about February 19, 2016, the Debtor sent "numerous emails and faxes," including a copy of a complaint that he allegedly sent to the Office of the United Nations High Commissioner for Human Rights (the "**U.N. Complaint**"). Gabriel Aff. ¶ 11; Ex. D. Gabriel contends that the U.N. Complaint "is critical of SCSU's supervised visitation program and contains numerous derogatory and disturbing statements regarding SCSU and its staff." *Id.* That complaint includes statements include likening SCSU to a "NAZI" program and describing an SCSU employee as a "Polish national obviously well-studied in the ancient NAZI research tactics perfected by Dr. Jozef Mengle." *See* U.N. Complaint, p. 2. It further alleges that SCSU, including that employee, was sabotaging the Debtor's supervised visits "so that they can extend these awfully intrusive and horrific research sessions, get more money for her program, use threats and blackmail to keep me and my kids in fear, and otherwise torment me and my children." *Id.* On February 24, 2016, SCSU closed the Debtor's file thereby terminating supervised visitation by the Debtor with his children at SCSU. Gabriel Aff. ¶ 18.[5] On February 27, 2016, Gabriel contacted "SCSU Campus Police to report the unwarranted and derogatory correspondence [including the U.N. Complaint] that had been

---

[5] Manchanda asserts that the termination actually occurred on February 23, 2016 when he was advised of that in a voicemail message received from an individual at SCSU identified as "Tony." Reply ¶ 12. Even if so, the timing difference is immaterial to the matters at issue here.

6

received by the Debtor." *Id.* at ¶¶ 19, 23. The Debtor attended no further supervised visitations at SCSU after the February 18, 2016 session.

## Relief Sought

On February 26, 2016, the Debtor filed this Motion. In seeking civil and criminal contempt against Gabriel and SCSU, the Debtor submits that those parties violated the stay in four ways. First, the Debtor asserts that the collection of the $40.00 in Visitation Session Fees violated the automatic stay because those post-petition payments were made on an obligation that arose pre-petition under the Supervised Visitation Contract and/or Clients Rights and Procedures. Reply ¶¶ 4, 5. During the April 12 Hearing, the Debtor asserted that the Visitation Agreement required set payments for a four month period. He further alleges that his payment of such fees were forced upon him and coercive and/or extortive in nature. *Id.* S*ee also* Manchanda Aff. ¶ 2, Memo. p. 17.[6]

Second, he asserts that the collection of the $40.00 in Visitation Session Fees violated the automatic stay because it was an act to obtain estate property. Reply ¶¶ 3d, 4, 5.

Third, the Debtor argues that Gabriel's report of the Debtor to SCSU campus police was a threat of criminal prosecution in furtherance of debt collection activities, and thereby constitutes a violation of the automatic stay not subject to the criminal prosecution exception under 11 U.S.C. § 362(b)(1). Memo of Law 17.

Fourth, the Debtor alleges that SCSU's termination of the visitation sessions through the closing of his file violated the stay because it was done as retaliation against him for complaining about fees and for filing the U.N. Complaint. *Id.* at ¶ 12, 14. The Debtor contends that

---

[6] Related alleged inappropriate activities included SCSU threatening "that they would cut him off from his kids, and give negative feedback to the family court" (Reply at ¶ 5); "SCSU actually demand[ing] more money to be paid but settl[ing] on the provided weekly dollar amounts due to Debtor not even having this money to begin with." (*Id.* at ¶ 4); and assertions that he was given "bills during his weekly visits" which violated the stay. *Id.* at ¶ 6 (internal quotation marks omitted).

7

> [W]hen Debtor complained to Ann Gabriel about this violation of the automatic stay and the unauthorized 'scientific and medical research experimentation' being conducted on Debtor and his minor children as a condition to see if his kids were safe, Ann Gabriel of SCSU and her cohorts moved to close and terminate Debtor's file and refuse to let him see his kids anymore, and began to harass him and his kids during their visits, while threatening Debtor with criminal prosecution in violation of the aforementioned case *Weary v. Poteat*.

Supp. Memo. 2.

As a result, the Debtor seeks a finding of civil contempt and criminal contempt, and the imposition of sanctions including "a fine and incarceration." (Manchanda Aff. ¶ 2.) He further seeks an award of costs (*id.* at ¶ 6) and fees (*see* Reply 5).

### **Gabriel and SCSU Objection**

Gabriel asserts that, as of the Petition Date, the Debtor was not indebted to SCSU. Obj. ¶ 4, Gabriel Aff. ¶ 20. She argues that collection of the Visitation Session Fees was entirely a post-petition event to which the automatic stay does not apply. Obj. ¶¶ 4-6. Gabriel denies that she violated the stay when she closed the Debtor's visitation file and when she notified SCSU campus police. She maintains that both of those acts were done only after the Debtor made "abusive and derogatory statements toward the SCSU and its staff" (Obj. ¶ 9; Gabriel Aff. ¶¶ 21-23) in violation of provisions of the facility's visitation session policies as contained in the Visitation Agreement. Obj. ¶ 7; Gabriel Aff. ¶¶ 10-23. Furthermore, she contends that the Debtor's visitation file was closed by SCSU only after determining that his "dissatisfaction with the supervised visitation procedures [expressed during the February 18 Conference] would compromise the therapeutic process" and because "the [U.N. Complaint] contained abusive language directed toward SCSU staff." Gabriel Aff. ¶ 18. Moreover, Gabriel disputes the Debtor's contention that her contact with the SCSU campus police was somehow a violation of the automatic stay because that contact "had absolutely nothing to do with an outstanding debt,"

8

but rather involved "reasons of public safety." *Id.* at ¶ 9. Thus, the closing was purely for non-monetary reasons, which would not violate the automatic stay. Obj. ¶ 7. She also asserts that she never threatened the Debtor with potential criminal prosecution. Obj. ¶ 9.

During the April 12 Hearing, addressing arguments raised by the Debtor in his Reply for the first time and as raised during the hearing, Gabriel's counsel disputed the Debtor's contention that the Visitation Agreement created any pre-petition obligation to pay Visitation Session Fees for sessions that were to occur post-petition. In doing so, counsel challenged the Debtor's characterization of the provisions of the Visitation Agreement, including that the agreement (i) has no set duration; (ii) provides for payments solely on a going forward basis as and when attending a supervised visitation session, except for a set-up fee that the Debtor paid pre-petition (*see* Gabriel Aff. Ex. B, SV 66, ¶ 23); (iii) provides for a mechanism to reduce or eliminate the session payments upon request which generally range from $20.00 to $60.00 per session (*id.* at SV 67); (iv) that the Debtor was already at the low end of the range of payments per session; and (v) that the Debtor did not make a request to eliminate the payment altogether due to financial concerns.[7]

Counsel also argued that the automatic stay does not prevent a creditor providing post-petition services from collecting from a debtor for those services. To that end, counsel contended that since the Visitation Agreement provided for the Visitation Session Fees to be paid contemporaneously with the commencement of each session, those payments were on account of post-petition services rendered to the Debtor and, thus, the automatic stay was not implicated.

## Discussion

---

[7] At the April 12 Hearing, Debtor contended that he requested that the Visitation Session Fee be reduced to zero in light of his financial condition. Whether or not that request was made is irrelevant to the resolution of the Motion.

"A Bankruptcy Court has the power to issue contempt orders pursuant to statute." *Dorsagno v. Cooley*, No. 95-CV-201, 1996 WL 312180, at *2 (N.D.N.Y. May 31, 1996) (citing 11 U.S.C. § 105(a)). That power extends to willful violations of the automatic stay. *See, e.g.*, *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-87 (2d Cir. 1990); *In re Congregation Birchos Yosef*, 535 B.R. 629, 635 (Bankr. S.D.N.Y. 2015); *Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1555 (11th Cir. 1996); *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447-50 (10th Cir. 1990). In this Circuit, willful stay violations may be sanctionable under a contempt standard unless the putative violator "had acted without maliciousness and had had a good faith argument and belief that its actions did not violate the stay." *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1104 (2d Cir. 1990).

Before considering whether a party should be held in contempt and sanctioned accordingly, the Court must first determine whether a complained of action constitutes a violation of the automatic stay. The burden of proving a stay violation is on the "party seeking to hold another in civil contempt," and the violation must be established "by clear and convincing evidence." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citations omitted). That standard "requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Id.* (citation omitted).

The Debtor contends that Gabriel and SCSU violated §§ 362(a)(3) and/or (a)(6) of the Bankruptcy Code by collecting, or threatening criminal prosecution in order to collect, from property of the estate on pre-petition indebtedness due and owing by the Debtor to SCSU. He further contends that the closing of his file as retaliation for complaining about fees also violated the stay. As explained below, the Court finds no merit to any of those contentions because he

10

has not adduced any evidence that Gabriel or anyone else at SCSU undertook any actions against him that could be construed as violating the stay.

**Collection of Visitation Session Fees for Post-Petition**
**Sessions is Not Collection of Pre-Petition Debt**

The Debtor first argues that the Visitation Session Fees collected by SCSU from him post-petition for contemporaneous visitation sessions are actually payments of a pre-petition obligation, and that such post-petition collection violates the automatic stay. The Debtor grounds that assertion on the fact that he entered into the Visitation Agreement pre-petition and that such agreement created a pre-petition obligation to pay visitation fees even if the visitation sessions occur post-petition. We find no merit in that argument.

Contrary to the Debtor's assertion in his Reply and during the April 12 Hearing, there is no provision in the Visitation Agreement that the Debtor's obligation to pay any Visitation Session Fees arose prior to the Petition Date. In fact, the agreement expressly provides for the opposite. The Supervised Visitation Contract states that "[p]ayment will be made at the beginning of each visit." Gabriel Aff. Ex. C. Thus, unless and until the Debtor actually attended a visitation session under the Visitation Agreement, he had no obligation to pay a Visitation Session Fee.

Section 362(a)(6) bars "any act to collect . . . or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). Debtor misplaces his reliance on this provision because, by its terms, it does not apply to post-petition debt like that at issue here. *See, e.g.*, *In re Galgano*, 358 B.R. 90, 97-98 (Bankr. S.D.N.Y. 2007) ("[T]he filing of a bankruptcy petition operates as a stay against various acts of creditors, but

11

16-10222-jlg    Doc 146    Filed 05/19/16    Entered 05/19/16 16:17:28    Main Document
Pg 12 of 20

only as to pre-petition debts."). As of the Petition Date, the Debtor was not indebted to SCSU.[8] His obligation to make the $20.00 per session payment under the Visitation Agreement did not arise until he utilized SCSU's services on February 11 and February 18, respectively. Accordingly, collection by SCSU from the Debtor of fees incurred post-petition for visitation sessions conducted post-petition does not violate the automatic stay's prohibition against the collection of pre-petition obligations under § 362(a)(6) of the Bankruptcy Code.

**Payment of Post-Petition Visitation Session Fees is an**
**Ordinary Expense of the Debtor not Subject to the Automatic Stay**

The Debtor's alternative argument is that SCSU's collection of a Visitation Session Fee violates the automatic stay as an act to obtain possession of property of the Debtor's estate. To support that assertion, the Debtor relies on the proposition that "[a]s long as the Chapter 13 case is pending, the automatic stay of 11 U.S.C. § 362 [ (a)(3) an (a)(4) [sic]] restrains postpetition creditors from taking action against 'property of the estate' to collect their postpetition debts." *In re Bottone*, 226 B.R. 290, 297 (Bankr. D. Mass. 1998) (citations omitted). *See* Reply 3(d). The Debtor takes that isolated statement out of context, and it has no application here.

In *Bottone*, the court held that "the claim of a debtor's attorney for legal services rendered in a Chapter 7 case subsequently converted to Chapter 13 is an administrative priority claim in the Chapter 13 case which must be treated pursuant to the provisions of § 1322(a)(2), i.e., to be paid in full through the plan. *Id.* at 298. That court's discussion of the potential impact of the automatic stay was contained in a discussion of "theoretical and practical problems" that could occur if such fees were not addressed under § 330(a)(4)(B).[9] *Id.* at 297. The concern to the court

---

[8] Pursuant to Federal Rule of Evidence 201(c)(1), the Court takes judicial notice of the Debtor's schedules which reflect that the Debtor did not list SCSU as a creditor in Schedule D (secured creditors) [ECF Doc. No. 31] or Schedule E/F (unsecured creditors) [ECF Doc. No. 32].
[9] That section of the Bankruptcy Code is the provision under which counsel to chapter 13 debtors generally seek fee awards, but has no relevance to the issues currently before the Court.

was that failure to include the payment of the counsel fees in the chapter 13 plan could prevent that creditor from collecting the fees from the chapter 13 debtor because of the expansive reach of property of the estate in a chapter 13 and the automatic stay preventing attachment or execution on a judgment. *Id.* Thus, *Bottone* is inapposite because that concern is not present here. The Debtor is left with his unsupportable position that the mere fact he is in bankruptcy relieves him from any obligation to pay for post-petition services he receives.

Chapter 13 debtors have an inherent right to use property of the estate to pay ordinary and basic living expenses. "[T]he use must be reasonable and will usually include normal living expenses, e.g., bills, rent, etc. Exactly what are 'ordinary' and 'necessary' living expenses depend upon the facts of each case but certainly there are outside limits." *Bogdanov v. Laflamme (In re Laflamme)*, 397 B.R., 194, 206 (Bankr. D. N.H. 2008).

> According to COLLIER ON BANKRUPTCY:
>
> Congress apparently felt that there was no need to explicitly state the right of a nonbusiness chapter 13 debtor to use property in the ordinary course of the debtor's affairs, since section 1306(b) expressly authorizes the chapter 13 debtor to retain possession of all property of the estate. It seems extremely doubtful that Congress would have intended to require notice and a hearing as a prerequisite to the normal use of property of the estate, including postpetition earnings, household goods, vehicles and residential property, in a case commenced by a debtor not engaged in business. The administrative burdens and uncertainties attendant upon such a radical limitation would be a substantial deterrent to chapter 13 use by nonbusiness debtors.

8 COLLIER ON BANKRUPTCY ¶ 1303.02 (16th ed. 2015). However, that right extends only to "use [of] property of the estate for ordinary and necessary living expenses, provided such use is not in bad faith." *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 426 B.R. 52, 66 (E.D.N.Y. 2010) (affirming bankruptcy court's determination that use of property of the estate to pay debts of debtor's business did "not constitute 'ordinary and necessary' living expenses); *cf. Montclair Prop. Owners Ass'n v. Reynard (In re Reynard)*, 250 B.R. 241, 248, 249 (Bankr. E.D. Va. 2000)

13

(recognizing need of debtor to use property of the estate to pay living expenses consistent with budget that was taken into consideration during chapter 13 plan confirmation process). *Accord In re McCann*, 537 B.R. 172, (Bankr. S.D.N.Y. 2015) ("Extraordinary purchases, sales and credit transactions require court approval.") (quoting *Fatsis*, 405 B.R. at 9). As a result, "[p]ost-petition creditors providing a Chapter 13 debtor with goods or services are permitted to invoice debts as they come due and payment by the Chapter 13 debtor from post-petition income does not require authorization by the Court." *In re Jones*, 369 B.R. 745, 750 (B.A.P. 1st Cir. 2007) (affirming bankruptcy court denial of chapter 13 debtor's request for sanctions for utility's termination of services for failure to pay post-petition amounts due); *cf. In re Sciarrino*, Case No. 9:11-bk-05881, 2013 WL 3465920, at *4 (Bankr. M.D. Fla. July 10, 2013) (discussing chapter 13 post-confirmation collection efforts by utility and stating that "[I]f a debtor's postpetition earnings are not necessary to fund the chapter 13 plan, they are the debtor's property to spend as the debtor chooses. This would include the payment of postpetition debts.").

We find that the $20.00 fee charged per session by SCSU is incident to the Family Court Proceeding and, regardless, an ordinary and necessary part of the Debtor's day-to-day living expenses payable out of the property of the Debtor's estate without need of court approval for the Debtor to make such payment or SCSU to receive such payment. Thus, SCSU was free to request and collect Visitation Session Fees from the Debtor, and the Debtor was free to pay, for visitation sessions conducted post-petition regardless of the source of the payment.

Accordingly, the Debtor has not established that SCSU's request for and collection of the Visitation Session Fees violated the Bankruptcy Code's proscription of asserting control over property of the Debtor's estate.

**Threats of Criminal Prosecution**

14

The Debtor further submits that Gabriel and at least one other person at SCSU made threats[10] that they would seek criminal prosecution against him if he did not pay Visitation Session Fees. His contention that those alleged threats of criminal prosecution violated the automatic stay as an impermissible debt collection practice springs from his misplaced reliance on *Weary v. Poteat*, 627 Fed. Appx. 475 (6th Cir. 2015)). In that case, a debtor was indebted pre-petition to her landlord under a residential lease. *Id.* at 476. After receiving notice of that debtor's bankruptcy case, the landlord mailed letters to the debtor's counsel and the debtor's mother threatening to pursue criminal charges against the debtor predicated on her prepetition tendering of a bad check to the landlord. *Id.* at 476-77. In doing so, he acknowledged the existence of the bankruptcy case prevented him from commencing civil collection proceedings. *Id.* at 476-77. The Sixth Circuit confirmed the bankruptcy court's finding that the landlord's letters "had only one purpose, to harass and coerce the [d]ebtor into paying Mr. Weary's claim," and, as such, the threats did not fall within the § 362(b)(1) criminal prosecution exception for the stay. *Id.* at 477 (quoting bankruptcy court's bench opinion). As a result, the bankruptcy court's finding that the landlord's criminal prosecution threats violated the automatic stay and imposition of sanctions for doing so were affirmed. *Id.* at 479.

Here, it is undisputed that Gabriel contacted SCSU campus police regarding the Debtor, and that the Debtor spoke with someone from campus police. However, the Debtor has not established that Gabriel, the campus police, or anyone else at SCSU, threatened him with criminal prosecution as a means for attempting to collect any pre- or post-petition indebtedness. First, the Debtor was not indebted to SCSU when Gabriel contacted the campus police. He had

---

[10] In his moving papers and during the April 12 Hearing, the Debtor asserted that he has voicemail and e-mail messages containing alleged threats of criminal prosecution for non-payment, and identified one of the senders as "Tony" from SCSU. Assuming without deciding that such threats were actually made, as discussed below, the existence of a criminal prosecution threat would not violate the automatic stay under the facts of this case.

15

paid for the two visitation sessions he attended, and, as previously determined, the Visitation Agreement did not create any payment obligation outside of paying on a session by session basis. Second, Gabriel limited her reporting to campus police to advising them that the Debtor had made "abusive and derogatory statements toward the SCSU and its staff." Obj. ¶ 9; Gabriel Aff. ¶¶ 21-23. Third, the Debtor's own description of his conversation with a campus police officer omits any indication that any criminal prosecution threats were made to the campus police by Gabriel, or by that officer to the Debtor. *See* Reply ¶¶ 7, 14. There is no proof Gabriel's contact with SCSU campus police or the police department's contact with the Debtor included any threats of criminal prosecution against the Debtor. *See In re Batt*, 322 B.R. 776, 780 (Bankr. N.D. Ohio 2005) (dismissing complaint seeking injunctive relief because debtor failed to introduce any evidence on motive of creditor threatening criminal prosecution over bad check). Likewise, even if a separate threat was made to the Debtor by Gabriel or anyone else at SCSU, which the Court does not find occurred, such threat would not have been in furtherance of collecting a debt because the Debtor was not indebted to SCSU at any point at which the Debtor alleges such threats were made. Thus, no stay violation could have occurred. Therefore, *Poteat* is distinguishable and of no support to the Debtor because the debtor in that case actually owed her former landlord money, he was attempting to collect that money post-petition, and he actually threatened to seek criminal prosecution of the debtor. *Id.* at 476-77.[11]

---

[11] In addition to the *Poteat* case, the Debtor string cites to a series of cases involving debtors seeking to enjoin the continuation of criminal prosecutions against them. S*ee* Memo of Law 5 (*Holder v. Dotson (In re Holder)*, 26 Bankr. 789 (Bankr. M.D. Tenn. 1982; *Wise v. Ritter (In re Wise)*, 25 Bankr. 440 (Bankr. E.D. Va. 1982), [et al.]). The Debtor also references several other cases, including *Davis v. Sheldon*, 691 F.2d 176 (3d Cir. 1982), as a comparison between the motivation test applied in several of the aforementioned cases and the "bad-faith-irreparable injury" test applied in other cases. None of those cases cited by the Debtor are applicable here because the Debtor has not established, nor even alleged, the existence of any actual criminal prosecution against him. Moreover, they are all distinguishable because none of those cases involve debtors seeking civil or criminal contempt.

In any event, contacting law enforcement for reasons other than attempting to collect a debt is not barred by the automatic stay. *See Poteat*, 627 Fed. Appx. at 478 (recognizing that but for attempting to collect a debt "[creditor] was never prohibited from filing a police report, speaking with prosecutors, or otherwise petitioning the government to commence a criminal action against [debtor]") (quoting lower court, 2015 WL 4747883, at *6 (E.D. Tenn. Jan. 8, 2015). The record is clear that Gabriel's contact with campus police was to cause the Debtor to stop communicating with SCSU personnel, not to force debtor to pay a debt.[12]

Accordingly, the Debtor has not satisfied his burden of establishing that Gabriel and/or anyone else at SCSU violated the automatic stay through a threat of criminal prosecution in attempting to collect a pre-petition debt, or that her contact with campus police itself violated the stay.

---

[12] We note, without deciding, that to the extent such contact was to seek commencement of a criminal action, Gabriel's reporting the Debtor to campus police may be excepted from the automatic stay under § 362(b)(4), otherwise known as the "police or regulatory power" exception. *See* 11 U.S.C. § 362(b)(4). Gabriel's stated intention in bringing the Debtor's statements to the attention of campus police was over a concern for public safety. *See* Gabriel Aff. ¶ 9. "The phrase 'police or regulatory power' refers to the enforcement of laws affecting health, welfare, morals and safety . . . ." *Universal Life Church v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997). The exception's purpose includes "a governmental unit [ ] suing a debtor to prevent or stop violation of . . . safety or similar police or regulatory laws, or attempting to fix damages for violation of such a law . . .. is not stayed under the automatic stay." *U.S. ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 282 (E.D.N.Y. 2006) (citations omitted).

**Cancellation of Visitation Sessions Did Not Violate Automatic Stay**

The Debtor also alleges that SCSU's closing of the Debtor's file, thereby terminating his supervised visitation sessions at SCSU, was a violation of the automatic stay, although the Debtor's submissions on this point are not clear. He alleges that the cancellation occurred "because Debtor complained about the forced payments to see/speak to his kids." *See, e.g.*, Reply ¶ 12. Gabriel challenges that assertion and states that the closing of the Debtor's visitation file with SCSU was due to the Debtor's "abusive and derogatory" comments contained in the U.N. Complaint (s*ee* Gabriel Aff. 22), and the Debtor's expression of "dissatisfaction" with the supervised visitation process during the February 18 Conference as grounds for terminating visitation at SCSU. Gabriel Aff. ¶¶ 10, 18, 22. The Visitation Contract contains clear provisions that prohibit abusive and derogatory comments directed at employees of SCSU. *See* Gabriel Aff. Ex. C. The Supervised Visitation Contract, ¶¶ 21, 26. Having reviewed that document, the Court finds that it was reasonable for Gabriel to believe the U.N. Complaint contained abusive and derogatory statements generally about SCSU, and specifically about one of its employees. Thus, the closing of the Debtor's file was consistent with the provisions of the Visitation Agreement.

Regardless, it is not entirely clear whether the Debtor seeks to establish a violation of §§ 362(a)(3) or (a)(6). Nonetheless, the Court finds that neither section was violated. First, subsection (a)(6) is limited to the collection of pre-petition debts. Here, as discussed above, the Debtor was not indebted to SCSU as of the Petition Date. Accordingly, § 362(a)(6) is irrelevant.

Section 362(a)(3) stays "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). It focuses on taking formal post-judgment action through, among other things, attempting to execute on a judgment. *See Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines,*

18

*Inc.)*, 61 B.R. 758, 779 (S.D. Tex. 1986) (recognizing that "courts have clearly distinguished between the entry of judgment, and attempts to enforce a judgment against property of the estate when determining whether a violation of subsection 362(a) has occurred."). Thus, it bars the actual taking of property of the estate, or "exercise[ing] dominion over property that belonged to [the debtor's estate]." *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995).[13] The Debtor has not identified any interest in property associated with the visitation sessions that is property of his estate.[14] In closing the file, SCSU did not exercise control over estate property. Moreover, child visitation issues are generally within the province of the state court and the continuation of a visitation proceeding is excepted from the stay under § 362(b)(2)(A)(iii). *See, e.g.*, *In re Taylor*, 216 B.R. 366, 369 (Bankr. S.D.N.Y. 1998) (stating that "noneconomic aspects of the matrimonial action, such as . . . the . . . visitation of children, are not subject +to the Automatic Stay."), *rev'd on other grounds*, 233 B.R. 639 (S.D.N.Y. 1999); *In re Kallabat*, 482 B.R. 563, 571 (Bankr. E.D. Mich. 2012) (including child visitation proceedings as being excepted from automatic stay under 362(b)(2)(A)(iii)). The manner in which SCSU conducts, and in this instance terminates, visitation sessions certainly are incident to the visitation proceeding in the first instance. Accordingly, the Debtor has not shown that SCSU's cancelation of his supervised visits with his children implicates any of the conduct prohibited by the automatic stay.

Based on the foregoing, the Debtor has established no basis on which to hold Gabriel or anyone else at SCSU in civil contempt for alleged violations of the automatic stay on any ground. It follows that there is no cause for holding Gabriel in criminal contempt, since that

---

[13] Activities occurring prior to seeking such enforcement, such as requesting that a post-petition debt be paid or commencing an action to recover such debt do not fall within § 362(a)(3)'s prohibition. *In re Shuman*, 122 B.R. 317, 318 (Bankr. S.D. Ohio 1990) ("The automatic stay does not prohibit the prosecution of an action against a debtor based upon a claim that arose after the filing of the bankruptcy petition.").

[14] Pursuant to Federal Rule of Evidence 201(c)(1), the Court takes judicial notice of the Debtor's schedules which reflect that the Debtor did not list the Visitation Agreement in Schedule A/B (property) [ECF Doc. No. 27] as personal property in which the Debtor owned an interest, or in Schedule G (executory contracts) [ECF Doc. No. 33].

19

carries with it an even higher burden requiring proof beyond a reasonable doubt. *See Stockschlaeder & McDonald, Esq. v. Kittay (In re Stockbridge Funding Corp.)*, 158 B.R. 914, 918 n.7 (citing *U.S. v. Twentieth Century Fox Film Corp.*, 862 F.2d 656, 659 (2d Cir. 1989)).[15]

The Court next considers whether the Debtor has established any entitlement to relief under § 362(k) of the Bankruptcy Code. In relevant part, that section states that "an individual injured by any willful *violation* of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." *Id.* (emphasis added). To establish a right to relief under this provision, the Debtor must prove by a preponderance of the evidence that, among other things ". . . that [Gabriel's] actions were in willful violation of the stay . . . ." *In re Parry*, 328 B.R. 655, 658 (Bankr. E.D.N.Y. 2005). Thus, just like civil contempt discussed above, the remedy provided under § 362(k) of the Bankruptcy Code must be predicated on a willful violation of the automatic stay. 11 U.S.C. § 362(k). The Debtor has not established that any act by Gabriel or anyone else at SCSU constitutes a violation of the automatic stay. Accordingly, the Debtor is not entitled to any remedial relief under § 362(k).

## **Conclusion**

Based on the foregoing, and for the reasons stated, the Motion is **DENIED.**

Gabriel is directed to settle an order on no less than seven (7) days' notice.

Dated: New York, New York
       May 19, 2016                              /s/ James L. Garrity, Jr.
                                                              United States Bankruptcy Judge

---

[15] Thus, the Court need not consider whether it has the authority to impose sanctions for criminal contempt. *United States v. Guariglia*, 962 F.2d 160, 163 (2d Cir. 1992) ("there is a serious question as to whether the bankruptcy court would have had the authority to punish Guariglia for criminal contempt . . . .").